1997–NMSC–002

930 P.2d 1144

**Merle Applebaum SANDERS, Petitioner–Respondent,**

v.

**Michael G. ROSENBERG, Respondent–Petitioner.**

**No. 22871.**

Supreme Court of New Mexico.

Dec. 3, 1996.

Shannon L. Donahue, P.C., Shannon L. Donahue and Cindi L. Pearlman, P.C., Cindi L. Pearlman, Albuquerque, for Petitioner–Respondent.

Law Office of Mel B. O'Reilly, Mel B. O'Reilly, Albuquerque, for Respondent–Petitioner.

## OPINION

FRANCHINI, Justice.

1　We granted Petitioner Michael Rosenberg's petition for writ of certiorari to determine whether the Court of Appeals correctly ruled that the trial court's disqualification of counsel was an abuse of discretion. We hold the trial court's discretion to determine the best interest of children is sufficiently broad to support the disqualification of counsel, and, provided there is substantial evidence to support the ruling, it will not be disturbed on appeal. In the instant case, we find no abuse of discretion and affirm the trial court's decision to disqualify Sanders. We therefore reverse the decision of the Court of Appeals.

2　*Facts and procedure.* The underlying suit giving rise to the disqualification order concerned the divorce of the Petitioner Michael G. Rosenberg (Rosenberg) and Respondent Merle Applebaum Sanders (Merle). Subsequent to the entry of the final divorce decree in July 1985, the parties litigated recurring issues of the custody of their three children, time sharing, and child support. During their marriage, Merle and Rosenberg had three children, who primarily reside with their mother Merle. In 1990, Merle married Respondent Steven K. Sanders (Sanders), an attorney, and in January 1993 he entered his appearance to represent her on the remaining issues in the ongoing divorce proceedings.

3　In 1993, Rosenberg moved to disqualify Sanders on three separate occasions on the grounds that Sanders was a necessary witness and his representation would not be in the best interest of the children. The court denied Rosenberg's motions. The following year, in 1994, Rosenberg filed a motion for a protective order requesting that Sanders not be allowed to take his deposition because of Sanders's dual roles as stepfather to Rosenberg's children and present husband of his ex-wife. The court granted Rosenberg's motion for a protective order, finding that allowing Sanders to take Rosenberg's deposition would not be in the best interests of the children. Thereafter, the court agreed to reconsider whether Sanders should be disqualified as counsel in the case and requested the parties provide affidavits on the matter. Before that court could rule on the disqualification issue, the case was transferred to another judge.

4　Following its reassignment, Rosenberg renewed his motion to disqualify Sanders. After a hearing on that motion, the newly assigned judge ruled that Sanders should be disqualified. Sanders appealed.

5　On interlocutory appeal, the Court of Appeals reversed, holding that the trial court's disqualification of counsel constituted an abuse of discretion. The Court of Appeals held that Sanders had not violated Rule 16–107, and, though it recognized the trial court's broad authority to fashion rulings in the best interests of the children, it held that such authority was not sufficiently broad to disqualify a party's attorney absent an ethical or other violation. We disagree and reverse the decision of the Court of Appeals.

■　6　*Standard.* We review the trial court's decision under a substantial evidence and abuse of discretion standard. *See Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984) (considering a substantial evidence claim, this Court views the evidence in the light most favorable to the result below, resolving all conflicts and

indulging in all inferences in favor of the trial court's decision); *City of Santa Fe v. Komis,* 114 N.M. 659, 663, 845 P.2d 753, 757 (1992) (holding that an abuse of discretion is found when the trial court's rulings were "clearly against the logic and effect of the facts and the circumstances before the court"); *State v. Litteral,* 110 N.M. 138, 141, 793 P.2d 268, 271 (1990); *State v. Simonson,* 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983); *Alpers v. Alpers,* 111 N.M. 467, 472, 806 P.2d 1057, 1062 (Ct.App.1990).

7  *The trial court's broad discretion to fashion its rulings in the best interest of children includes the authority to disqualify counsel.* When the trial court entered its disqualification order, it set forth the following two grounds for its ruling:

> B.  It is not in the best interests of the minor children of the parties for their stepfather and mother's husband, Steven K. Sanders, Esq., to continue his representation of the children's mother, Merle A. Sanders, in this matter.

> C.  The interests of justice would be impeded if Steven K. Sanders were allowed to continue his representation of the Petitioner in this matter.

Prior to the entry of its order, the trial court filed a letter decision that alluded to Sanders' continued representation of Merle as violative of Rule 16–107.  The trial court's disqualification order, however, made no mention of any ethical or other violation, relying instead upon its broad discretion to fashion its rulings in the best interests of the children.  Accordingly, we address only the trial court's stated basis for its ruling as explicitly expressed in its final order, rather than the application of SCRA 16–107.

8  As Petitioner Rosenberg correctly asserts, a number of courts have held that "[a] trial court has broad discretion in determining whether disqualification is required in a given case." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 777 F.Supp. 690, 693 (C.D.Ill.1991) (citing *Schloetter v. Railoc of Indiana, Inc.,* 546 F.2d 706, 710 (7th Cir. 1976)); *see also Redd v. Shell Oil Co.,* 518 F.2d 311, 314 (10th Cir.1975); *Gould v. Mitsui Min. & Smelting Co.,* 738 F.Supp. 1121, 1125 (N.D.Ohio 1990); *Kalmanovitz v. G.*

*Heileman Brewing Co., Inc.,* 610 F.Supp. 1319, 1322 (D.Del.1985).  Similarly, a number of courts have also held that any doubts should be resolved in favor of disqualification. *See Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir.1975); *Cronin v. Eighth Judicial Dist. Court,* 105 Nev. 635, 781 P.2d 1150, 1153 (1989).

9  Even though a party has a right to be represented by an attorney of her own choosing, *see Chappell v. Cosgrove,* 121 N.M. 636, 638, 916 P.2d 836, 838 (1996) (citing *In re American Cable Publications, Inc.,* 768 F.2d 1194, 1196 (10th Cir.1985)) we have recognized that such a right is not absolute. *Chappell,* 121 N.M. at 638, 916 P.2d at 838. If a compelling reason exists that supports the disqualification of counsel, a court may reject that party's chosen counsel. *Id.* (citing, *Ramsay v. Boeing Welfare Benefit Plans Comm.,* 662 F.Supp. 968, 970 (D.Kan. 1987)) ("The court is also mindful that a person's right to select his own counsel, although not an absolute right, may be overridden only where compelling reasons exist."). In *Chappell,* we determined that the trial court was entitled to exercise its discretion to disqualify the party's choice of counsel when the counsel was a necessary witness under SCRA 1986, 16–307 (Repl.Pamp.1995) (lawyer as witness).  121 N.M. at 640, 916 P.2d at 840.  In that case, because we found that the disqualified counsel was not a necessary witness, we found no compelling reason existed that was sufficient to override a party's choice of counsel. *Id.*  In the instant case, we determine whether the trial court's disqualification of Sanders under the "best interests of the children" rule constitutes a compelling reason sufficient to deny the mother her counsel of choice.

10  "In New Mexico, there is a strong tradition of protecting a child's best interests in a variety of circumstances." *In re Adoption of Francisco A.,* 116 N.M. 708, 713, 866 P.2d 1175, 1180 (Ct.App.1993).  It is well-settled law that when the case involves children, the trial court has broad authority to fashion its rulings in "best interests of the children." *Id.; Rhinehart v. Nowlin,* 111 N.M. 319, 329, 805 P.2d 88, 98 (Ct.App.1990)

(applying the standard of "best interest of the children" to determine stepmother's visitation rights). We regard the welfare of the children as a "matter of primary concern, paramount to the wishes of the parents." *Edington v. Edington,* 50 N.M. 349, 352, 176 P.2d 915, 917 (1947) (applying this court's policy concerns regarding the welfare of the children in a custody case). The court's authority under the "best interest of the children" rule is essentially equitable:

> [W]hen dealing with children, the district court is exercising its equitable powers. . . . The touchstone of equity is that it is flexible; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties. . . . [T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.

*In re Adoption of Francisco A.,* 116 N.M. at 713–14, 866 P.2d at 1180–81 (citations omitted). We therefore decline to limit or restrict the trial court's inherent authority to protect the interests of the children only to instances where counsel has violated an ethical or specific court rule.

■ 11 Whether Sanders's representation of the mother would be against the best interests of the child is a factual determination that must be made on the evidence. *See Rhinehart,* 111 N.M. at 329–30, 805 P.2d at 98–99 (affirming district court's determination that, on the facts before the court, court-mandated visitation by a stepmother would not be in the best interests of the children due to the high degree of conflict between stepmother and the father of the children). It is not the duty of the appellate court to reweigh the evidence before the trial court or reverse the trial court's decision simply because the appellate court would have reached a different decision. *See Gardner v. Gholson,* 114 N.M. 793, 800, 845 P.2d 1247, 1255 (1992). Instead we defer to the findings of the trial court because it is the duty of that court to weigh credibility of witnesses and to resolve conflicting evidence. *Montoya v. Torres,* 113 N.M. 105, 109, 823 P.2d 905, 909 (1991). Because the trial court is in a better position than we are to make the findings of fact, we view that evidence in the light most favorable to support the court's decision. Therefore, provided substantial evidence supports the trial court's decision to disqualify Sanders, it will not be disturbed on appeal. *See Id.; Mountain States Constr. Co. v. Aragon,* 98 N.M. 194, 195, 647 P.2d 396, 397 (1982).

12 The trial court held a hearing on the disqualification motion on March 20, 1994. The documentary evidence before the court consisted of the entire record of the parties' domestic relations case since 1985, and a number of affidavits—one by Rosenberg, one by Merle, one by Nancy B. Lee, Ph.D, a certified psychologist, and one by another certified psychologist, Dale Davis Smith, Ph.D. Both of the psychological experts recommended that the children undergo an assessment by a mental health care professional. In Dr. Lee's affidavit, she stated that she was "very concerned that this situation may be causing emotional harm to the children." She explained the problems as follows:

> When a step-parent serves as the mother's attorney, the family structure is changed. A step-parent must show respect for the natural parents so as not to place the children in any conflict of loyalties. By the step-father's adversarial role in battling the natural father and his attorney, the stepfather is placed in a conflict of interest between his role as an attorney and his role as a stepfather. *With this change in the family structure, the likelihood of successful cooperation between mother and natural father is greatly reduced.*
>
> . . .
>
> The change of the family structure when the stepfather becomes the attorney for the mother is likely to cause a wide range of problems for the children. These problems may be expressed in the behavior of the children, but not always. There is a risk that the problems may be less obvious and latent, and may not be expressed until later in the children's lives. Nevertheless the risk to the children can be very real.

The conflict here has been prolonged. The best interest of the children is for the stress that the children experience to be reduced by the parents. Usually most situations settle down within a couple of years of the divorce. Because this case has been going on so long, the children may have had to develop coping skills to deal with ongoing stress....

In her expert opinion, Dr. Lee further stated that:

> I believe the present situation where stepfather represents mother is potentially very unhealthy and destructive to the children's mental health. There is a real likelihood of harm to each child.

13 In Rosenberg's affidavit, he recounts various incidents where the children were upset or uncomfortable over Sanders's dual roles of stepfather and attorney representing their mother against their father. Rosenberg also disclosed his own discomfort with Sanders's representation, claiming that he was uncomfortable and intimidated by Sanders's presence at family gatherings, extracurricular events, school functions, religious functions and social functions. On one occasion, Rosenberg contends that both he and the children were upset when Sanders subpoenaed the children's paternal grandfather at one of the children's Bat Mitzvah. The mother denies the statements made in Rosenberg's affidavit, claiming that Rosenberg frequently asked the children inappropriate questions regarding Sanders and his role as her attorney.

14 The trial court's ruling disqualifying Sanders was clearly intended to reduce the hostility between those persons that are close to the children, including the stepfather, mother, and father. "By diminishing the likelihood of struggle between parents and others close to the child with whom the parents are at cross-purposes, the parental preference minimizes the likelihood the child will be exposed to hostility between those with whom he or she has a strong attachment, which can cause distress, create loyalty dilemmas and be disruptive of the child's socialization experiences." *In re Adoption of Francisco A.,* 116 N.M. at 721, 866 P.2d at 1188 (J. Hartz specially concurring) (quoting *In re Marriage of Gayden,* 229 Cal.App.3d 1510, 280 Cal.Rptr. 862, 865 (1991)).

15 Sanders contends that the trial court abused its discretion in disqualifying him from representing Merle. We disagree. Under the proper circumstances, the trial court may disqualify counsel pursuant to the "best interest of the children" rule. Here, the trial court properly weighed two important interests—the best interests of the children and the mother's interest in representation by counsel of her own choosing. In this particular domestic relations case, there exists a long-term, ongoing conflict between the divorced parents. There is ample evidence in the record to support the court's decision that, in view of the continuing conflict between the parties, the continued representation by Sanders would not be in the best interests of the children. The representation by the stepfather against the children's natural father is inherently likely to affect the children. *See Rhinehart,* 111 N.M. at 325, 805 P.2d at 94 (recognizing that the stepparents' interaction and interrelationship with stepchildren may significantly affect the children's best interest in a custody case). Under the facts herein, the trial court's ruling was logical and reasonable. *See Komis,* 114 N.M. at 663, 845 P.2d at 757.

16 *Conclusion.* For the foregoing reasons, we affirm the trial court's order disqualifying Sanders.

17 **IT IS SO ORDERED.**

BACA, C.J., and McKINNON, J., concur.